Linda **JOHNSON**, Plaintiff–Appellee,

v.

**MBNA AMERICA BANK, NA,**
Defendant–Appellant,

and

**Experian Information Solutions, Incorporated; Equifax Credit Information Services, Incorporated; Trans Union LLC, Defendants.**

No. 03–1235.

United States Court of Appeals,
Fourth Circuit.

Argued: Dec. 4, 2003.
Decided: Feb. 11, 2004.

**ARGUED:** Earle Duncan Getchell, Jr., Mcguire Woods, L.L.P., Richmond, Virginia, for Appellant. Richard John Rubin, Santa Fe, New Mexico, for Appellee. **ON BRIEF:** William H. Baxter, II, James E. Brown, Mcguire Woods, L.L.P., Richmond, Virginia, for Appellant. Leonard A. Bennett, Newport News, Virginia, for Appellee.

Before WILKINS, Chief Judge, TRAXLER, Circuit Judge, and Richard D. BENNETT, United States District Judge for the District of Maryland, sitting by designation.

Affirmed by published opinion. Chief Judge WILKINS wrote the opinion, in which Judge TRAXLER and Judge BENNETT joined.

## OPINION

WILLIAM W. WILKINS, Chief Judge:

MBNA America Bank, N.A. (MBNA) appeals a judgment entered against it following a jury verdict in favor of Linda Johnson in her action alleging that MBNA violated a provision of the Fair Credit Reporting Act (FCRA), see 15 U.S.C.A. § 1681s–2(b)(1) (West 1998) (amended Dec. 4, 2003), by failing to conduct a reasonable investigation of Johnson's dispute concerning an MBNA account appearing on her credit report. Finding no reversible error, we affirm.

### I.

The account at issue, an MBNA Master-Card account, was opened in November 1987. The parties disagree regarding who applied for this account and therefore who was legally obligated to pay amounts owed on it. It is undisputed that one of the applicants was Edward N. Slater, whom Johnson married in March 1991. MBNA contends that Johnson was a co-applicant with Slater, and thus a co-obligor on the account. Johnson claims, however, that

she was merely an authorized user and not a co-applicant.

In December 2000, Slater filed for bankruptcy, and MBNA promptly removed his name from the account. That same month, MBNA contacted Johnson and informed her that she was responsible for the approximately $17,000 balance on the account. After obtaining copies of her credit report from the three major credit reporting agencies—Experian, Equifax, and Trans Union—Johnson disputed the MBNA account with each of the credit reporting agencies. In response, each credit reporting agency sent to MBNA an automated consumer dispute verification (ACDV). The ACDVs that Experian and Trans Union sent to MBNA specifically indicated that Johnson was disputing that she was a co-obligor on the account. *See* J.A. 278 (Experian) ("CONSUMER STATES BELONGS TO HUSBAND ONLY"); *id.* at 283 (Trans Union) ("WAS NEVER A SIGNER ON ACCOUNT. WAS AN AUTHORIZED USER"). The ACDV that Equifax sent to MBNA stated that Johnson disputed the account balance.

In response to each of these ACDVs, MBNA agents reviewed the account information contained in MBNA's computerized Customer Information System (CIS) and, based on the results of that review, notified the credit reporting agencies that MBNA had verified that the disputed information was correct. Based on MBNA's responses to the ACDVs, the credit reporting agencies continued reporting the MBNA account on Johnson's credit report.

Johnson subsequently sued MBNA, claiming, *inter alia,* that it had violated the FCRA by failing to conduct a proper investigation of her dispute. *See* 15 U.S.C.A. § 1681s–2(b)(1). A jury trial was held, and, following the presentation of Johnson's case, MBNA moved for judgment as a matter of law. That motion was denied. After the close of the evidence,

the jury found that MBNA had negligently failed to comply with the FCRA, and it awarded Johnson $90,300 in actual damages. MBNA renewed its motion for judgment as a matter of law, asserting that § 1681s–2(b)(1) only required MBNA to conduct a cursory review of its records to verify the disputed information. Alternatively, MBNA argued that even if it were required to conduct a reasonable investigation of Johnson's dispute, the evidence showed that MBNA had met that obligation. The district court again denied MBNA's motion, concluding that § 1681s–2(b)(1) required MBNA to conduct a reasonable investigation and that there was sufficient evidence from which the jury could conclude that MBNA had failed to do so.

## II.

MBNA first maintains that the district court erred in ruling that § 1681s–2(b)(1) requires furnishers of credit information to conduct a reasonable investigation of consumer disputes. Section 1681s–2(b)(1) imposes certain duties on a creditor who has been notified by a credit reporting agency that a consumer has disputed information furnished by that creditor:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
>
> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency . . .;
>
> (C) report the results of the investigation to the consumer reporting agency; and
>
> (D) if the investigation finds that the information is incomplete or inaccurate,

report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.[1]

MBNA argues that the language of § 1681s–2(b)(1)(A), requiring furnishers of credit information to "conduct an investigation" regarding disputed information, imposes only a minimal duty on creditors to briefly review their records to determine whether the disputed information is correct. Stated differently, MBNA contends that this provision does not contain any qualitative component that would allow courts or juries to assess whether the creditor's investigation was reasonable. By contrast, Johnson asserts that § 1681s–2(b)(1)(A) requires creditors to conduct a reasonable investigation.[2] We review this question of statutory interpretation de novo. *See Holland v. Pardee Coal Co.,* 269 F.3d 424, 430 (4th Cir.2001).

 In interpreting a statute, we must first "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular

dispute in the case." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). "Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Id.* (internal quotation marks omitted). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341, 117 S.Ct. 843.

 The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." *Am. Heritage Dictionary* 920 (4th ed.2000); *see Webster's Third New Int'l Dictionary* 1189 (1981) (defining "investigation" as "a searching inquiry"). Thus, the plain meaning of "investigation" clearly requires some degree of careful inquiry by creditors. Further, § 1681s–2(b)(1)(A) uses the term "investigation" in the context of articulating a creditor's duties in the consumer dispute process outlined by the FCRA. It would make little sense to conclude that, in

---

1. While this appeal was pending, § 1681s–2(b)(1) was amended to add a new provision imposing certain additional duties on creditors in connection with investigations of consumer disputes. *See* Fair and Accurate Credit Transactions Act of 2003, Pub.L. No. 108–159, sec. 314(b), § 623(b)(1)(E), 117 Stat. 1952, 1995–96. That provision is not relevant to our resolution of this appeal.

We recognize that the FCRA applies not only to those that furnish and report consumer credit information but also to those that furnish and report certain other types of information regarding consumers. *See* 15 U.S.C.A. § 1681a(d)(1) (West 1998 & Supp.2003). Thus, consistent with other provisions of the FCRA, § 1681s–2(b) uses the general terms "furnisher[ ] of information" and "consumer reporting agency." However, because of the specific nature of this case, and for ease of reference, in this opinion we use the terms "creditor" and "credit reporting agency." Nonetheless, our discussion of § 1681s–

2(b)(1) and other FCRA provisions applies equally to those who furnish other types of consumer information.

2. Neither this court nor any other circuit has addressed the extent to which a creditor must investigate a consumer dispute in order to avoid liability under § 1681s–2(b)(1). However, district courts that have considered the issue have consistently recognized that the creditor's investigation must be a reasonable one. *See Agosta v. Inovision, Inc.,* 2003 WL 22999213, at *5 (E.D.Pa. Dec.16, 2003); *Buxton v. Equifax Credit Info. Servs., Inc.,* 2003 WL 22844245, at *2 (N.D.Ill.Dec.1, 2003); *Wade v. Equifax,* 2003 WL 22089694, at *2–*3 (N.D.Ill. Sept.8, 2003); *Betts v. Equifax Credit Info. Servs., Inc.,* 245 F.Supp.2d 1130, 1135 (W.D.Wash.2003); *Olwell v. Med. Info. Bureau,* 2003 WL 79035, at *5 (D.Minn. Jan.7, 2003); *Kronstedt v. Equifax,* 2001 WL 34124783, at *16 (W.D.Wis. Dec.14, 2001); *Bruce v. First U.S.A. Bank,* 103 F.Supp.2d 1135, 1143 (E.D.Mo.2000).

creating a system intended to give consumers a means to dispute—and, ultimately, correct—inaccurate information on their credit reports, Congress used the term "investigation" to include superficial, *un* reasonable inquiries by creditors. *Cf. Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir.1991) (interpreting analogous statute governing reinvestigations of consumer disputes by credit reporting agencies to require reasonable investigations); *Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir.1986) (same). We therefore hold that § 1681s–2(b)(1) requires creditors, after receiving notice of a consumer dispute from a credit reporting agency, to conduct a reasonable investigation of their records to determine whether the disputed information can be verified.

### III.

■ MBNA next contends that even if § 1681s–2(b)(1) requires creditors to conduct reasonable investigations of consumer disputes, no evidence here supports a determination by the jury that MBNA's investigation of Johnson's dispute was unreasonable. We review the denial of MBNA's motion for judgment as a matter of law de novo. *See Baynard v. Malone*, 268 F.3d 228, 234 (4th Cir.2001). We must view the evidence in the light most favorable to Johnson, the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility. *See id.* at 234–35. "The question is whether a jury, viewing the evidence in the light most favorable to [Johnson], could have properly reached the conclusion reached by this jury." *Id.* at 235 (internal quotation marks omitted). We must reverse if a reasonable jury could only rule in favor of MBNA; if reasonable

minds could differ, we must affirm. *See id.*

■ As explained above, MBNA was notified of the specific nature of Johnson's dispute—namely, her assertion that she was not a co-obligor on the account. Yet MBNA's agents testified that their investigation was primarily limited to (1) confirming that the name and address listed on the ACDVs were the same as the name and address contained in the CIS,[3] and (2) noting that the CIS contained a code indicating that Johnson was the sole responsible party on the account. The MBNA agents also testified that, in investigating consumer disputes generally, they do not look beyond the information contained in the CIS and never consult underlying documents such as account applications. Based on this evidence, a jury could reasonably conclude that MBNA acted unreasonably in failing to verify the accuracy of the information contained in the CIS.

MBNA argues that other information contained in the CIS compels the conclusion that its investigation was reasonable. For example, in support of its alleged belief that Johnson was a co-applicant, MBNA presented evidence that Johnson's last name had been changed on the account following her marriage to Slater and that Johnson's name was listed on the billing statements. But this evidence is equally consistent with Johnson's contention that she was only an authorized user on Slater's account and that, to the extent MBNA's records listed her as a co-obligor, those records were incorrect. MBNA also points to evidence indicating that, during her conversations with MBNA following Slater's bankruptcy filing, Johnson attempted to set up a reduced payment plan

---

3. Under MBNA's procedures, agents are only required to confirm two out of four pieces of information contained in the CIS—name, address, social security number, and date of birth—in order to verify an account holder's identity. Johnson's social security number and date of birth were not listed on the CIS summary screen.

and changed the address on the account to her business address. However, a jury could reasonably conclude that this evidence showed only that Johnson had tried to make payment arrangements even though she had no legal obligation to do so. Indeed, Johnson testified that, during her conversations with MBNA, she had consistently maintained that she was not responsible for paying the account.

Additionally, MBNA argues that Johnson failed to establish that MBNA's allegedly inadequate investigation was the proximate cause of her damages because there were no other records MBNA could have examined that would have changed the results of its investigation. In particular, MBNA relies on testimony that, pursuant to its five-year document retention policy, the original account application was no longer in MBNA's possession. Even accepting this testimony, however, a jury could reasonably conclude that if the MBNA agents had investigated the matter further and determined that MBNA no longer had the application, they could have at least informed the credit reporting agencies that MBNA could not conclusively verify that Johnson was a co-obligor.[4] *See* 15 U.S.C.A. § 1681i(a)(5)(A) (West 1998) (providing that if disputed information "cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation") (amended Dec. 4, 2003).

### IV.

■ MBNA next asserts that the district court improperly instructed the jury regarding the standards for determining liability. We review challenges to jury instructions for abuse of discretion. *See S. Atl. Ltd. P'ship of Tenn. v. Riese*, 284 F.3d 518, 530 (4th Cir.2002). "Instructions are adequate if construed as a whole, and in light of the whole record, they adequately inform the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." *Id.* (internal quotation marks & alterations omitted). Even if we conclude that the challenged instructions are erroneous, we will not reverse "unless the error seriously prejudiced the challenging party's case." *Id.*

### A.

■ MBNA first argues that the district court erred in instructing the jury that, in determining whether MBNA's investigation was reasonable, it should consider "the cost of verifying the accuracy of the information versus the possible harm of reporting inaccurate information." J.A. 767–68. MBNA apparently contends that the balancing test described in this instruction is inapplicable here because it is derived from cases involving the reasonableness of a *credit reporting agency's* reinvestigation, *see, e.g., Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 287 (7th Cir.1994). We recognize that creditors and credit reporting agencies have different roles and duties in investigating consumer disputes under the FCRA. Nevertheless, we believe that the general balancing test articulated by the district court—weighing the cost of verifying disputed information against the possible harm to the consumer—logically ap-

---

4. Because we conclude there is sufficient evidence to support a jury finding that MBNA failed to conduct a reasonable investigation of Johnson's dispute, we do not consider Johnson's argument that the judgment should be affirmed on the alternative ground that MBNA failed to "report the results of the investigation to the consumer reporting agenc[ies]," 15 U.S.C.A. § 1681s–2(b)(1)(C).

plies in determining whether the steps taken (and not taken) by a creditor in investigating a dispute constitute a reasonable investigation. The district court therefore did not abuse its discretion in giving this instruction.

**B.**

 MBNA also contends that, after instructing the jury that the FCRA "does not require that credit card account records, including original applications, be kept in any particular form," J.A. 770, the district court erred in further instructing the jury that "the law does prohibit MBNA from maintaining its record[s] in such manner as to consciously avoid knowing that information it is reporting is [in-]accurate," *id.* MBNA claims that this instruction improperly permitted the jury to assess the adequacy of MBNA's record keeping system. However, the other detailed instructions given by the district court made clear that Johnson's claim was based on MBNA's failure to conduct a reasonable investigation of its records, not on the inadequacy of those records. And, it appears that the brief instruction challenged by MBNA, which the district court gave near the end of its jury instructions, was simply intended to clarify the legal effect of MBNA not maintaining the original account application—not to invite the jury to independently assess MBNA's record keeping practices.

MBNA further claims that the challenged instruction improperly incorporated a legal standard from another provision of § 1681s–2, relating to the accuracy of information that creditors provide to credit reporting agencies. *See* 15 U.S.C.A. § 1681s–2(a)(1)(A) (West 1998) (prohibiting creditors from furnishing consumer information to a credit reporting agency "if the [creditor] knows or consciously avoids knowing that the information is inaccurate") (amended Dec. 4, 2003). MBNA emphasizes that this provision is enforce-

able only by government agencies and officials, not by consumers. *See* 15 U.S.C.A. § 1681s–2(d) (West 1998) (amended Dec. 4, 2003). Again, however, the extensive instructions by the district court made clear that Johnson's claim was based on MBNA's duty to investigate consumer disputes, not its duty to provide accurate information. Indeed, the district court instructed the jury that the damages recoverable by Johnson "may not include any damages that were caused by the inaccuracy of the information itself." J.A. 768. We therefore conclude that the instruction given by the district court did not mislead the jury or otherwise prejudice MBNA.

**V.**

For the reasons set forth above, we affirm the judgment of the district court.

*AFFIRMED*