Thomas SCHAFFHAUSEN, Plaintiff,

v.

BANK OF AMERICA, N.A.; Experian Information Solutions, Inc.; CSC Credit Services, Inc.; and Equifax, Inc. d/b/a Equifax Information Services, Inc., Defendants.

No. Civ. 033492 (JRT/FLN).

United States District Court, D. Minnesota.

March 21, 2005.

Thomas J. Lyons, Lyons & Associates, Little Canada, MN, for plaintiff.

Emily L. Fitzgerald, Dorsey & Whitney, Minneapolis, MN, for defendant Bank of America, N.A.

Dustin B. Rawlin, Jones Day, Cleveland, OH, for defendant Experian Information Solutions, Inc.

Charles Frederick Webber, Faegre & Benson, Minneapolis, MN, for defendant CSC Credit Services, Inc.

Robert W. Murnane, Murnane Conlin White & Brandt, St. Paul, MN, for defendant Equifax, Inc.

## MEMORANDUM OPINION
## AND ORDER

TUNHEIM, District Judge.

Thomas Schaffhausen ("Schaffhausen") brought this suit against the Bank of America ("BOA") and three credit reporting agencies ("CRAs")—Experian, CSC, and Equifax [1]—alleging that they inaccurately reported his BOA account and failed to reinvestigate his dispute in violation of the Fair Credit Reporting Act ("FCRA"). 15 U.S.C. §§ 1681, *et seq.* All of the defendants move for summary judgment. For the reasons discussed below, the Court grants the CRAs' motions in their entirety and denies in part and grants in part BOA's motion.

### BACKGROUND

Schaffhausen, a former bank president, opened a credit card account with BOA in 1995. Between January 1996 and November 1999, Schaffhausen was past due on the account twenty-six times. Schaffhausen contacted BOA in December 1999 to negotiate a settlement of the account. Schaffhausen agreed to pay 80% of the $6,383 balance, and made a payment of $5,004 in December 1999. BOA, therefore, took a loss of $1,379 on the account, which

---

1. "CSC and Equifax are separate corporations, but they have an agreement under which they share the same credit reporting database, which Equifax possesses and maintains." (CSC's Mem. in Supp. of Mot. for Summ. J. at 4 n. 2.) For the purposes of this motion, CSC and Equifax are equally situated.

was recorded as a "charge off" in the bank's books.

On December 20, 1999, Schaffhausen received a letter from BOA stating that it received the $5,004 settlement payment and indicating an outstanding balance of $1,379. That same day, Schaffhausen contacted CSC and requested a copy of his credit report. The report from CSC showed the BOA account as a charged off account, with a balance of $1,379, and a status of R9, which is a code that denotes a charged off debt. Schaffhausen contacted CSC to dispute how the account was reported. Schaffhausen told CSC that the "charged off account" should read "settlement," the balance should be zero, and the R9 status should be changed. CSC contacted BOA, which responded that Schaffhausen's account should be modified to show a status of a "paid charge off with a $0 balance." BOA did not indicate that the R9 status should be changed. CSC updated the account accordingly.

On February 23, 2000, Schaffhausen obtained another copy of his credit report from CSC. The BOA account was reported as a "paid charge off," with a zero balance, and a status of R9. On February 24, 2000, Schaffhausen faxed a copy of his CSC credit report to BOA asking that the "paid charge off" be changed to "settlement," and that the R9 status be changed to R1. On February 29, 2000, BOA sent Schaffhausen a letter stating that the BOA account should be reported as "settled in full" and that BOA had already contacted Experian, Equifax, and Trans Union Credit Information to update the account status. Neither Experian nor Equifax acknowledge receiving such a notification from BOA.

After checking his credit reports again and finding no change, Schaffhausen sent a fax to BOA on March 6, 2000. According to Schaffhausen, BOA called him back that day and assured him that the account status would be corrected immediately.

Over two years later, in September of 2002, while attempting to refinance his house, Schaffhausen learned that the BOA account was still being reported as charged off. On November 7, 2002, Schaffhausen requested a copy of his credit report from Equifax, Experian, and Trans Union. Equifax's report showed the BOA account as a "paid charge off," with a zero balance, and an R9 status. The Experian report listed the BOA account as having been settled and charged off. Schaffhausen asserts that the Trans Union report was correct.

On November 13, 2002, Schaffhausen telephoned Experian claiming that the BOA account was being incorrectly reported and requested a reinvestigation. In response, Experian contacted BOA. On November 18, 2002, BOA confirmed that the account was being correctly reported. Experian sent Schaffhausen a correction summary stating that the BOA account would remain on his file unchanged. On November 14, 2002, Schaffhausen telephoned CSC and notified them that the status of the BOA account should not be charged off. That same day, CSC contacted BOA informing them of Schaffhausen's dispute and asking for further information on the account. On November 19, 2002, BOA responded to CSC's request and notified CSC that the account status was correct and instructed CSC to change the balance from $0 to $1,379, which is the reverse of what BOA had instructed CSC to do in response to Schaffhausen's previous dispute in January of 2000, and inconsistent with what BOA told Experian the day before. CSC updated the account as instructed by BOA and sent notification to Schaffhausen.

Schaffhausen again contacted BOA directly. On December 24, 2002, BOA sent

Schaffhausen a letter stating that, "[a] request has been submitted to delete the R9, Charge off status, from all major credit bureaus. Your account was settled in full on 12/09/99 and should not reflect charge off. It has a zero balance." (Compl.Ex. 14.)

On February 12, 2003, Experian processed a request from BOA and updated Schaffhausen's BOA account to "Paid in settlement/Past due 30 days" and removed the charged off notation.

On April 28, 2003, Schaffhausen again obtained his credit reports. The report from Experian no longer showed the BOA account as charged off, but the CSC/Equifax report still showed the account as having a $1,379 balance and an R9 status.

Schaffhausen asserts that, as a result of the CRAs and BOA's actions, he was unable to secure credit, has incurred out-of-pocket expenses, lost time at work, and has suffered damage to his credit worthiness, as well as emotional distress, humiliation, mental anguish, and anxiety.

## ANALYSIS

### I. SUMMARY JUDGMENT

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court considering a motion for summary judgment must view all of the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### II. FCRA CLAIMS

#### A. The CRAs

Schaffhausen alleges that the CRAs failed to follow reasonable procedures to assure maximum possible accuracy of his consumer credit history in violation of 15 U.S.C. § 1681e(b), and failed to reinvestigate his dispute regarding the alleged errors and inaccuracies in his credit report in violation of 15 U.S.C. § 1681i(a)(1). Schaffhausen also asserts that the CRAs are liable for punitive damages pursuant to 15 U.S.C. § 1681n because their conduct was willful.

To avoid summary judgment on this claim, Schaffhausen "must present evidence that he disputed information in [the CRAs'] reports and that they failed to reinvestigate the information, or failed to confirm, correct, modify or delete that information." *Reed v. Experian Info. Solutions, Inc.*, 321 F.Supp.2d 1109, 1113–14 (D.Minn.2004). Even though the "reasonableness of procedures is usually a jury question," in order to survive a motion for summary judgment, Schaffhausen "must offer specific facts that could allow a reasonable-fact-finder to determine that [the CRAs'] procedures were not reasonable." *Olwell v. Med. Info. Bureau*, 2003 WL 79035, at *3 (D.Minn. Jan. 7, 2003).

There is no dispute that the CRAs contacted BOA in response to Schaffhausen's disputes, updated their reports, and notified Schaffhausen within the time frame allowed by the FCRA. In addition, the Court finds that there was nothing in the nature of Schaffhausen's disputes or the BOA's response to put the CRAs on notice that further investigation was necessary. For example, Schaffhausen was not assert-

ing that the credit card was not his, *see Johnson v. MBNA America Bank, NA,* 357 F.3d 426 (4th Cir.2004), that he was a victim of identity theft, *see Graham v. CSC Credit Servs., Inc.,* 306 F.Supp.2d 873 (D.Minn.2004), or that his credit history had become mixed up with someone else's history, *see Reed,* 321 F.Supp.2d 1109. Such circumstances may warrant further investigation on the part of the CRAs. Instead, in this case, Schaffhausen was essentially notifying the CRAs that BOA told him it would report the account in a certain way and that the CRAs were not following suit. In response, the CRAs went to the source to verify the information. BOA consistently verified the account as charged off and the CRAs updated their reports accordingly. The Court does not see any evidence that the CRAs' procedures were not reasonable as required by the FCRA. As such, the Court grants the CRAs' motions for summary judgment on Schaffhausen's claims that they violated the FCRA.

## B. Bank of America

Schaffhausen alleges that BOA violated 15 U.S.C. § 1681s–2(b) by failing to conduct a reasonable investigation with respect to the disputed information in his credit reports. Schaffhausen further asserts that BOA is liable for punitive damages because it acted willfully pursuant to 15 U.S.C. § 1681n.

■ Section 1681s–2(b) "describes the duties of any entity which provides information to a Credit Reporting Agency when such entity is notified of a dispute regarding the completeness or accuracy of the furnished information." *Johnson v. United States,* 2000 WL 33956225, at *3 (D.Minn. Oct. 17, 2000). Pursuant to § 1681s–2, once BOA received notice of Schaffhausen's dispute from a CRA, it was required to "conduct a reasonable investi-

gation of [its] records to determine whether the disputed information can be verified." *Johnson,* 357 F.3d at 431; *Malm v. Household Bank,* 2004 WL 1559370, at *4 (D.Minn. July 7, 2004). Moreover, such an investigation "requires some degree of careful inquiry by creditors." *Johnson,* 357 F.3d at 430. To overcome BOA's motion for summary judgment, Schaffhausen, "must present evidence that [BOA] failed to comply with the provisions of § 1681s–2 [and] must ... present evidence of harm and causation, or willfulness entitling him to statutory or punitive damages." *Reed,* 321 F.Supp.2d at 1114.

### 1. Reasonable Investigation

■ Bank of America's convoluted and inconsistent responses to the CRAs inquiries show that its investigation procedures were unreasonable. BOA made numerous assurances to Schaffhausen that the status of his account would be changed in his credit report. Yet, after five years and numerous phone calls and faxes from Schaffhausen and dispute notices from the CRAs, Schaffhausen's CSC/Equifax report still shows the BOA account as charged off. BOA is unable to provide a copy of the letter it allegedly sent to the CRAs in February 2000 requesting that the account be listed as "settled in full," and as late as November 2002, BOA told two different CRAs to report the BOA account in two different ways. The miscommunication and lack of follow through on this issue create at least a jury question as to the reasonableness of BOA's procedures.

### 2. Harm and Causation

■ Schaffhausen claims that he was injured in that he (1) was denied two lines of credit; (2) had out-of-pocket expenses associated with disputing the BOA account; (3) suffered loss of time from work; (4) experienced lost credit opportunities;

and (5) suffered emotional distress, humiliation, mental anguish, and anxiety.

■ According to Schaffhausen, he was denied a Best Buy credit card after Household Bank relied on an Experian credit report. In July 2003, however, when Household Bank reviewed the credit report, the charged off language was no longer on the report. Experian had updated Schaffhausen's report to "Paid in settlement/Past due 30 days" in February of 2003. Schaffhausen also alleges that he had to pay a higher rate on a car loan when Barnett Chrysler denied him credit after the dealership relied on an Equifax credit report. Schaffhausen's only evidence of the higher rate is his deposition testimony in which Schaffhausen was unable to state what his current interest rate is or what his interest rate would have been had Barnett Chrysler not denied him credit. In addition, the credit report that Chrysler Barnett relied on included several other accurate derogatory remarks from Schaffhausen's other creditors. Schaffhausen offers no evidence that the derogatory remark about the BOA account influenced Chrysler Barnett's decision in any way. Schaffhausen's allegations of out-of-pocket expenses and lost time at work are equally unsubstantiated, and appear to be de minimis. Furthermore, Schaffhausen's claims for lost credit opportunities are not valid as this Court has already held that "such damages are not recoverable under FCRA." *Id.* at 1115. Finally, without evidence of a genuine injury, Schaffhausen's claims for emotional distress cannot stand. *Id.*

Therefore, the Court finds that Schaffhausen did not incur any actual damages as a result of the charged off remark on his credit report and grants BOA's motion for summary judgment with respect to Schaffhausen's claims for actual damages.

### 3. Willfulness

■ Section 1681n of the FCRA provides that a willful failure to comply with the FCRA entitles an aggrieved consumer to actual, or statutory and punitive damages. "Under FCRA, a CRA or furnisher willfully fails to comply when it knowingly and intentionally commit[s] an act in conscious disregard for the rights of others." *Id.* at 1116 (internal quotations omitted). The Eighth Circuit has held that " '[a]ctual damages are not a statutory prerequisite to an award of punitive damages under the [FCRA].' " *Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998) (*quoting Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 972 (4th Cir.1987)).

Schaffhausen has tried for years to correct his credit report. Whenever he would contact BOA, it would assure him that the charged off remark on his credit report would be removed. Yet, when the CRAs would contact BOA for verification, BOA would tell the CRAs to leave the charged off notation intact. The Court finds that this inconsistent response in the face of numerous requests from Schaffhausen and inquiries from the CRAs gives rise to a genuine issue of material fact with regard to BOA's willfulness in failing to comply with the FCRA. Therefore, the Court denies BOA's motion for summary judgment with respect to Schaffhausen's claim for punitive damages under § 1681n.

### III. DEFAMATION

■ Schaffhausen also asserts a claim for credit defamation against BOA and the CRAs. The FCRA provides that no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person

who furnishes information to a consumer reporting agency ... except as to false information furnished with malice or willful intent to injure such consumer. 15 U.S.C. § 1681h(e). As such, "State-law privacy causes of action, such as defamation and invasion of privacy, are preempted by the FCRA unless plaintiff shows that the disclosures were made with 'malice or willful intent to injure.'" *Olwell,* 2003 WL 79035, at *5. The malice or willful intent to injure contemplated by § 1681h(e) requires "a higher standard of proof than the willfulness required for punitive damages under § 1681n." *Id.* The Court finds that there is no evidence in this case that the CRAs or BOA acted with malice or willful intent. As already stated, the CRAs followed proper procedures in investigating Schaffhausen's disputes and updating his report. As for BOA, although the Court found that its failure to adequately address Schaffhausen's dispute gives rise to a jury question as to its willfulness in violating the FCRA, Schaffhausen has not presented sufficient evidence to suggest that BOA's actions were malicious or made in an attempt to injure Schaffhausen. Accordingly, the Court grants BOA's and the CRAs' motions for summary judgment on this claim.

This case will be placed on the Court's next available trial calendar

### ORDER

Based upon the foregoing, the submissions of the parties, the arguments of counsel, and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants'—Experian Information Solutions, Inc., CSC Credit Services, Inc., and Equifax, Inc.—motions for summary judgment [Docket Nos. 49, 57, and 67] are **GRANTED.** Defendants Experian Information Solutions, Inc., CSC Credit Services, Inc., and Equifax, Inc. are **DISMISSED with prejudice.**

2. Defendant Bank of America's motion for summary judgment [Docket No. 71] is **GRANTED IN PART** and **DENIED IN PART** as follows.

a. Defendant Bank of America's motion is **GRANTED** with respect to plaintiff's defamation claim and plaintiff's claim for actual damages under the Fair Credit Reporting Act.

b. Defendant Bank of America's motion is **DENIED** with respect to plaintiff's claim for punitive damages under the Fair Credit Reporting Act.