**Panina W. AVILES, Plaintiff,**

v.

**EQUIFAX INFORMATION SERVICES, LLC, et al., Defendants.**

**Civil No. 3:07CV48.**

United States District Court,
E.D. Virginia,
Richmond Division.

Sept. 18, 2007.

Jason Meyer Krumbein, Krumbein Consumer Legal Services, Richmond, VA, for Panina W. Aviles.

John Willard Montgomery, Jr., Montgomery & Simpson, LLP, Richmond, VA, John Anthony Love, Kilpatrick Stockton LLP, Atlanta, GA, for Equifax Information Services, LLC.

George Rubert Doumar, George R A Doumar PLLC, Arlington, VA, for Accredited Home Lenders, Inc.

### MEMORANDUM OPINION

DENNIS W. DOHNAL, United States Magistrate Judge.

This matter is before the Court by consent of the parties on the Defendant's motion for summary judgment. 28 U.S.C. § 636(c)(1). For the reasons set forth herein, the Defendant's Motion for Summary Judgment (docket entry no. 33) is GRANTED.

## I. SUMMARY OF FACTS AND ALLEGATIONS

Defendant Accredited Home Lenders, LLC ("Accredited") is a mortgage lender known for its willingness to lend to borrowers who might otherwise have difficulty obtaining credit. (Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s Mem.") at 2.) As such, Accredited is a furnisher of information to credit reporting agencies ("CRAs"). (Compl. ¶ 9.) Plaintiff Panina W. Aviles ("Plaintiff") obtained a mortgage from Accredited in February 2005. (Def.'s Mem. at 2.) On or about March 24, 2006, Plaintiff contacted Accredited complaining of an error on her credit report from Equifax, a CRA, which indicated that she had been thirty days late on a mortgage payment to Accredited in November 2004. *Id.*

In her Complaint, Plaintiff alleges that Accredited violated the Fair Credit Reporting Act ("FCRA") by willfully or negligently failing to conduct a reasonable reinvestigation upon receiving notice of her dispute as required by 15 U.S.C. § 1681s–2(b). (Compl. ¶ 32.) Accredited contends that it is entitled to summary judgment because it did, in fact, conduct a reasonable reinvestigation into Plaintiff's concerns about the November 2004 thirty-day late report. Accredited asserts that it sent correspondence to Plaintiff confirming that there were no delinquencies on her account, and that it also submitted an Automated Universal Data Form ("AUD") to all three credit reporting agencies, including Equifax, indicating that there were no late payments on Plaintiff's account. (*Id.* at 5, 15; Def.'s Ex. K.) According to Accredited, it took such measures even though Accredited's computer E–Oscar Reporting System makes it impossible for Accredited to report or verify delinquencies that fall outside of the starting and ending dates of the loan and the reported late payment of November 2004 was four months before Plaintiff obtained her loan from Accredited. (Def.'s Mem. at 12–14.)

## II. STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202. 251–52 (1986). In reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. *Id.* at 255, 106 S.Ct. 2505.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505 (emphasis in original). Indeed, summary judgment must be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To defeat an otherwise properly supported motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of some "metaphysical doubt" concerning a material fact. *Lewis v. City of Va. Beach Sheriff's Office*, 409 F.Supp.2d 696, 704 (E.D.Va.2006) (citations omitted). Of course, the Court cannot weigh the evidence or make credibility determinations in its summary judgment analysis. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir.2004).

Furthermore, a "material fact" is a fact that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir.2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505: *see also Hooven–Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir.2001). A "genuine" issue concerning a "material" fact only arises when the evidence, when viewed in the light most favorable to the non-moving party, is sufficient to allow a reasonable jury to return a verdict in that party's favor. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

## III. ANALYSIS

■ Consumers may bring a private cause of action against a furnisher of credit information. *See* 15 U.S.C. § 1681s–2(b). Although the term "furnisher" is not defined in the FCRA, this Court, as well as others, has interpreted the term as referring to entities that transmit to CRAs information relating to debts owed by consumers. *See, e.g., Saunders v. Equifax Info. Servs.*, Civil No. 3:05CV731, 2006 WL 2850647, at *1 n. 1 (E.D.Va. Oct.3, 2006) (Dohnal, J.); *Kane v. Guar. Residential Lending, Inc.*, No. 04–CV–4847, 2005 WL 1153623, at *3 (E.D.N.Y. May 16, 2005); *Carney v. Experian Info. Solutions, Inc.*, 57 F.Supp.2d 496, 500 (W.D.Tenn.1999). It is undisputed that Accredited regularly provides information to various CRAs concerning the status of debts owed by consumers, and thus, Accredited occupies the status of a "furnisher" for purposes of this litigation.

■ Title 15, United States Code section 1681s–2(b) governs a furnisher's duty once notice is received from a CRA that there is a dispute as to the completeness or accuracy of the information provided to that reporting agency. Pursuant to subsection (b), once the CRA gives notice to a furnisher, the furnisher must conduct an investigation into the information in question and must disseminate the results of

that investigation. *See* 15 U.S.C. § 1681s–2(b)(1).[1] In interpreting a furnisher's duties pursuant to the FCRA, the Court of Appeals for the Fourth Circuit has held that the furnisher's investigation must involve "some degree of careful inquiry." *Johnson v. MBNA Am. Bank, NA,* 357 F.3d 426, 430 (4th Cir.2004). Specifically, the furnisher must conduct "a reasonable investigation of [its] records to determine whether the disputed information can be verified." *Id.* at 431.

The question of whether a defendant's investigation is reasonable is usually a factual question reserved for trial. Summary judgment is proper, however, if the reasonableness of the defendant's procedures is beyond question. *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir.2005) (citation omitted).

### A. There Is No Evidence That Accredited Reported Plaintiff Late for November 2004.

Plaintiff's Complaint alleges only a November 2004 delinquency reported by Accredited which Plaintiff, herself, claims did not appear on her Equifax credit report until March 2006. (Compl. ¶ 11; Def.'s Ex. A) However, Plaintiff fails to provide any evidence, other than her own conclusory statements, to support the allegation of false reporting before she obtained her loan from Accredited.

In response to Accredited's Motion, Plaintiff only reiterates her conclusory allegation that Accredited reported a delinquency on her account, but she does not offer any evidence by affidavit or otherwise that definitively attributes the mistake to Accredited. In fact, Plaintiff proffers little, if any, evidence of any nature to support any of her claim(s) for relief. For example, she refers to a report from Equifax dated May 2, 2007, that indicates a late payment on her Accredited loan, but the report does not list the date of the late payment as being November 2004. (Pl.'s Ex. D). Moreover, both parties cite to the deposition of Accredited's representative's (Ms. Siler), in which she provides an explanation for the alleged November 2004 delinquency. Ms. Siler testified that "third-party credit companies" or "resellers" routinely share information, not only with CRAs, but also with each another. (Pl.'s Ex. C at 96; Def.'s Ex. D at 39). Such a practice, rather than a misreporting from Accredited, most likely resulted in the mistake on Plaintiff's report.

### B. The Mistake Could Not Have Come From Accredited

Plaintiff's own Complaint asserts that "Defendant Accredited reported that plaintiff was thirty days delinquent on or about November 2004, some 4 months before she obtained the mortgage, to defendant Equifax, along with [other CRAs] TransUnion, LLC (TransUnion) and Experian Information Solutions, Inc. (Experian)." (Compl. ¶ 11.) The Complaint specifically alleges that "Accredited reinserted the false and erroneous information." (*Id.* ¶ 17.) Plaintiff, however, fails to provide evidence indicating that Accredited ever reported such a delinquency, or even that Accredited "reinserted" it into Plaintiff's report.

Based on the uncontradicted testimony of Accredited's representative, Ms. Siler,

---

1. More specifically, the furnisher must, *inter alia:* (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided to it by the consumer reporting agency; (3) report the results of the investigation to the agency; and (4) if the information is found to be inaccurate or incomplete, report the results to all consumer reporting agencies to which it originally provided the erroneous information. 15 U.S.C. § 1681s–2(b).

the E–Oscar Reporting System used by the company makes it impossible to enter or verify a delinquent payment from a date before a loan was even disbursed. (Def.'s Mem. at 5; Def.'s Ex. D at 43–44; Def.'s Ex. J ¶ 5.)[2] Thus, Accredited's records for Plaintiff begin when she obtained the loan in February 2005, and the record ended when she refinanced and paid off her balance to Accredited in February 2006. (Def.'s Mem. at 3–4.) Plaintiff provides no evidence either to support her position, or to refute the reporting capabilities of Accredited's E–Oscar Reporting System as explained in the deposition testimony of Ms. Siler.

## C. Accredited Took Reasonable Steps to Investigate and Correct Any Mistakes

Despite the factual impossibility that the mistake originated with Accredited, the company nevertheless took several measures to address Plaintiff's concerns about the issue. Having been notified of the mistake on Plaintiff's report, Accredited responded by sending her a letter dated April 6, 2006, which confirmed that her loan was not outstanding in November 2004, and thus payment could not have been thirty days late. (Def.'s Mem. at 5–6; Def.'s Ex. I.) Accredited then also submitted an AUD dated April 13, 2006, to all three CRAs indicating that there were no delinquencies regarding Plaintiff's account. (*Id.* at 5, 15; Def.'s Ex. K.) In fact, a subsequent Automated Credit Dispute Verification Form ("ACDV") from Equifax dated May 3, 2006, verified that Accredited had corrected a "stray" report of a thirty-day late notice from November 2005, however, it said nothing of a delinquency from the November 2004 time frame. (*Id.* at 5–6; Def.'s Ex. L.) There is no evidence of a

November 2004 delinquency in any of the documents provided by either side. Furthermore, Accredited's current loan status for Plaintiff shows no delinquency for that time frame as well. (*Id.* at 6; Def.'s Ex. M.)

## D. Plaintiff Attempts to Raise New "Errors" In Her Response

As previously noted, Plaintiff alleges in her Complaint only the November 2004 inaccuracy supposedly reported by Accredited. In Plaintiff's Response to Accredited's Motion for Summary Judgment, however, she attempts to expand her allegations to encompass any date imaginable, stating "the alleged claims, while the dates are off, did in fact happen." (Pl.'s Resp. to Def.'s Mem. Supp. Summ. J. ("Pl.'s Resp."), at 11.) She also claims that "it is clear from the evidence provided by Equifax that AHL [Accredited] did in fact report some such delinquencies, and that they did in fact verify at least some delinquency of the plaintiff by the defendant." (Pl.'s Resp. at 10.) Specifically, Plaintiff attaches as Exhibit A, a copy of an ACDV from June 2, 2006, in which Accredited reported that Plaintiff's account was thirty to fifty-nine days past due. Although the date when Plaintiff's alleged "past due" occurred is unclear from the June 2006 ACDV, it is clear from the record and the testimony of Ms. Siler that the past due report could not be from November 2004, due to the impossibility of Accredited's entering or verifying a delinquent payment from a date before a loan was even disbursed. (Def.'s Mot. at 5; Def.'s Ex. D at 43–44; Def.'s Ex. J ¶ 5.) Plaintiff offers no evidence to the contrary.

■ To the extent that Plaintiff attempts, in her response, to raise claims

---

**2.** The software is keyed from the starting and ending dates of the loan; therefore, no information exists prior to the date the loan is opened. (Def.'s Ex. D at 44.)

that Accredited reported inaccuracies other than those supposedly reported in November 2004, she is precluded from doing so because she did not allege these purported inaccuracies in her complaint. The question of whether or not there are other inaccuracies from different dates on Plaintiff's credit report is therefore not a subject of this suit. A "complaint's primary purpose, [is] namely to guide defendants' discovery and to put 'defendant[s] on notice of the evidence [they] need[ ] to adduce in order to defend against the plaintiff's allegations.'" *United States ex rel. DRC, Inc. v. Custer Battles, LLC*, 472 F.Supp.2d 787, 796 (E.D.Va.2007) (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir.2000)). To allow Plaintiff to allege further inaccuracies at this stage simply because she has been unable obtain any evidence supporting the November 2004 delinquency claim would "seriously undermine the fairness of the litigation and unfairly prejudice the defendant[ ]." *Id.* at 795–96.

█ Liability under the FCRA does not arise simply from the appearance of an error or misreported item on a consumer's credit report, rather, liability attaches when the CRA or furnisher fails to conduct a reasonable reinvestigation into a disputed item. 15 U.S.C. §§ 1681i(a)(1)(A), 1681s–2(b)(1). The FCRA does not hold a furnisher of information strictly liable for its own errors, much less the errors that might emanate from a CRA or a third party.

## IV. CONCLUSION

█ In the absence of any evidence that Accredited reported, let alone initiated, the incorrect report of the November 2004 delinquency, the question of whether Accredited conducted a reasonable reinvestigation of Plaintiff's complaint is arguably irrelevant, and although it appears that there

may have been other disputed transactions, Plaintiff's Complaint is based on only the November 2004 delinquency. The evidence proffered by Defendant Accredited demonstrates that it would not be possible for Accredited to have provided information concerning payments made before the starting date of the loan. Despite such an impossibility, Accredited still diligently investigated the matter and attempted to remedy any errors. Accordingly, its efforts were reasonable as a matter of law and Defendant Accredited's Motion for Summary Judgment (docket entry no. 33) will be GRANTED. As a result, Defendant's Motion to Withdraw its Motion to Compel Non–Party Credit Plus, Inc. (docket entry no. 37), Defendant's Motion to Compel (docket entry no. 32), Plaintiff's Motion in Limine (docket entry no. 34), and Defendant's Motion in Limine (docket entry no. 36) will be DENIED as MOOT.

An appropriate Order shall issue.

Sept. 18, 2007.

## *ORDER*

This matter is before the Court by consent of the parties on Defendant Accredited's Motion for Summary Judgment. For the reasons set forth in the accompanying Memorandum Opinion, it is hereby ORDERED that:

1. Defendant Accredited's Motion for Summary Judgment (docket entry no. 33) is GRANTED;

2. Plaintiff's Motion in Limine (docket entry no. 34) is DENIED as MOOT;

3. Defendant Accredited's Motion in Limine (docket entry no. 36) is DENIED as MOOT;

4. Defendant Accredited's Motion to Withdraw its Motion to Compel as to Non–Parties Experian Information Solutions, Inc. and TransUnion Corp. (docket entry no. 37) and the

Motion to Compel (docket entry no. 32) are DENIED as MOOT.; and,

5. This case is CLOSED.

Let the Clerk forward a copy of this Order and the accompanying Memorandum Opinion to all counsel of record.

It is so ORDERED.