**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Karen Grey VILLARINI, Defendant–
Appellant.**

**No. 99–4939.**

United States Court of Appeals,
Fourth Circuit.

Argued: Dec. 4, 2000.

Decided: Feb. 1, 2001.

**ARGUED:** Paul Graham Beers, Glenn, Feldman, Darby & Goodlatte, Roanoke, VA, for Appellant. Thomas Ernest Booth, United States Department of Justice, Washington, DC, for Appellee. **ON BRIEF:** Robert P. Crouch, Jr., United States Attorney, Jennie L.M. Waering, Assistant United States Attorney, United States Department of Justice, Washington, DC, for Appellee.

Before WILKINS and KING, Circuit Judges, and GARWOOD, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, sitting by designation.

Affirmed in part, vacated in part, and remanded by published opinion. Judge WILKINS wrote the opinion, in which Judge KING and Senior Judge GARWOOD joined.

## OPINION

WILKINS, Circuit Judge:

Karen Grey Villarini appeals her convictions on one count of embezzlement, *see* 18 U.S.C.A. § 656 (West 2000), and four

counts of money laundering, *see* 18 U.S.C.A. § 1956(a)(1)(B)(i) (West 2000), arguing with regard to the money laundering counts that the evidence was insufficient and that venue was improper in the Western District of Virginia. She also contends that certain questioning of witnesses by the district court deprived her of a fair trial. Although the evidence is sufficient to support the money laundering convictions, we nevertheless vacate them for improper venue. However, because we conclude that Villarini was not denied a fair trial on the embezzlement charge, we affirm that conviction and remand for resentencing.

## I.

The offenses at issue here arise from Villarini's theft of money from the Bank of Floyd in Roanoke, Virginia, where she was employed as head teller. The Bank of Floyd monitored Villarini's cash flow by having her prepare a settlement sheet each day itemizing all the cash she held, including any mutilated cash that she held as part of her responsibilities as head teller. Bank employee Kit Edwards also monitored Villarini's cash flow on a random basis. Edwards never noted a discrepancy between what Villarini reported as to the amount of mutilated cash and the actual amount. However, Edwards admitted that she did not actually count the mutilated cash to determine whether there was a discrepancy.

In January 1997, Villarini notified the bank that she would be resigning at the end of February and moving to Florida to live near her daughter. On her last day of work, Villarini prepared a ticket indicating that a cash payout of $83,000 had occurred. The next business day, a bank auditor discovered that Villarini's cash drawer was short $83,000, and bank auditors found no justification for the apparent $83,000 payout. The Government's theory at trial was that no $83,000 payout occurred that day, but rather that, over the years, Villarini had embezzled the money and overstated the amount of mutilated cash she had under her control.

When Villarini arrived in Florida, she opened savings and checking accounts at Republic Security Bank. Four transactions with that bank allegedly involving some of the cash she had embezzled resulted in the four money laundering counts: On or about March 3, 1997, she purchased a cashier's check from Republic Security in the amount of $2,950 to pay the moving company that shipped her belongings; then, on March 27, April 11, and April 25, 1997, Villarini deposited $2,200, $1,000, and $2,000 into her checking account in order to cover checks for her living expenses.

Prior to trial, Villarini moved to dismiss the money laundering charges, contending that venue was improper in the Western District of Virginia. The district court took that motion under advisement. Villarini also moved for a judgment of acquittal on the money laundering counts at the close of the Government's case in chief on the basis of insufficiency of the evidence and lack of venue. The district court took this motion under advisement as well. Villarini renewed her motion for judgment of acquittal after the close of all of the evidence, at which time the court again took the motion under advisement. After the jury returned verdicts of guilty on all counts, Villarini filed post-trial motions on various grounds, including improper venue, judicial bias, and insufficient evidence. The court overruled the motions.

## II.

Villarini first contends that the Government's evidence was insufficient to support her money laundering convictions. We review a denial of a motion for a judgment of acquittal de novo. *See United States v. Romer*, 148 F.3d 359, 364 (4th Cir.1998). If the motion is based on insufficiency of the evidence, the verdict "must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v.*

*United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

■ In order to sustain a conviction under 18 U.S.C.A. § 1956(a)(1)(B)(i), the Government must prove that:

(1) the defendant conducted or attempted to conduct a financial transaction having at least a *de minimis* effect on interstate commerce or involving the use of a financial institution which is engaged in, or the activities of which have at least a *de minimis* effect on, interstate commerce; (2) the property that was the subject of the transaction involved the proceeds of specified unlawful activity; (3) the defendant knew that the property involved represented the proceeds of some form of unlawful activity; and (4) the defendant knew that the transaction was designed in whole or in part, to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the unlawful activity.

*United States v. Wilkinson,* 137 F.3d 214, 221 (4th Cir.1998) (citation omitted). To establish the fourth element, the Government must prove a specific intent to conceal. *See United States v. Gilliam,* 975 F.2d 1050, 1056 (4th Cir.1992). Villarini argues that the Government's evidence was insufficient to prove such intent.

We conclude that the evidence here was sufficient to support the money laundering convictions. Typically, a scheme to deposit a large amount of cash in relatively small increments would be prosecuted pursuant to 18 U.S.C.A. § 1956(a)(1)(B)(ii) (West 2000) as designed to avoid a transaction reporting requirement. *See United States v. Garcia–Emanuel,* 14 F.3d 1469, 1478 (10th Cir.1994). Nevertheless, the fact that Villarini did not deposit the entire $83,000 in a single bank transaction, and instead made four transactions, each involving less than $3,000, at two-to-four-week intervals, gives rise to a reasonable inference that the transactions were designed to avoid suspicion or to give the appearance that she had a legitimate cash income stream. *See id.* (reversing judgment of acquittal on money laundering count when defendant's wife made purchase by depositing ill-gotten cash in amounts of $7,000, $8,000, and $8,000 into her checking account and then writing a $20,000 check).

Villarini argues that if she had been concerned with arousing suspicion, she would not have made any bank deposits and, further, that the four deposits in controversy were sufficiently open, notorious, and large to attract the attention of federal investigators. Although these were appropriate jury arguments, they do not negate the existence of substantial evidence supporting the verdicts of guilty on the money laundering counts. We therefore affirm the denial of the motion for judgment of acquittal.

### III.

■ Villarini next maintains that venue for the money laundering charges was improper in the Western District of Virginia. We agree.

Article III of the Constitution provides that "[t]he Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2, cl. 3. The Sixth Amendment reinforces this command, stating that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. Finally, Federal Rule of Criminal Procedure 18 provides that "[e]xcept as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed."

■ When multiple counts are alleged in an indictment, venue must be proper on each count. *See United States v. Bowens,* 224 F.3d 302, 308 (4th Cir.2000). Venue on a count is proper only in a district in which an essential conduct element of the

offense took place. *See id.* at 309. The burden is on the Government to prove venue by a preponderance of the evidence. *See United States v. Barsanti,* 943 F.2d 428, 434 (4th Cir.1991).

Here, the conduct alleged in the money laundering counts consists solely of four transactions conducted entirely in Florida. The indictment does not allege that any act in furtherance of the money laundering occurred outside of Florida.

The Government nevertheless contends that 18 U.S.C.A. § 3237(a) (West 2000) dictates that venue was proper in the Western District of Virginia. Section 3237(a) provides as follows:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

> Any offense involving the use of . . . transportation in interstate or foreign commerce . . . is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce . . . moves.

The Supreme Court construed § 3237(a) in relation to money laundering prosecutions in *United States v. Cabrales,* 524 U.S. 1, 118 S.Ct. 1772, 141 L.Ed.2d 1 (1998). There, the defendant was charged in the Western District of Missouri with laundering the proceeds of drug transactions that occurred in that district, even though she was not charged with complicity in the drug sales and all of the alleged laundering transactions occurred in Florida. *See Cabrales,* 524 U.S. at 3–4, 118 S.Ct. 1772. The Court recognized that several circuits had held that venue for money laundering offenses is proper in the district in which the funds were unlawfully generated, even if the financial transaction giving rise to the laundering charge occurred wholly within another district. *See id.* at 5–6, 118 S.Ct. 1772 (citing *United States v. Heaps,* 39 F.3d 479, 482 (4th Cir.1994), *United States v. Beddow,* 957 F.2d 1330, 1335–36 (6th Cir.1992), *United States v. Sax,* 39 F.3d 1380, 1390–91 (7th Cir.1994), and *United States v. Angotti,* 105 F.3d 539, 544–45 (9th Cir.1997)). Nevertheless, the Court noted that the money laundering statute prohibits only the financial transaction and "not the anterior criminal conduct" that produced the funds that were laundered. *Id.* at 7, 118 S.Ct. 1772. Accordingly, the Court held that venue in Missouri was improper. *See id.* at 8, 118 S.Ct. 1772. The Court did not decide whether a defendant who transported criminal proceeds from one district to another in order to launder them in the latter district could be tried in the district from which he transported the proceeds. *See id.*

The Government attempts to distinguish *Cabrales* by noting that Villarini, unlike the defendant in *Cabrales,* was charged with the crime that generated the laundered proceeds in the district in which she was tried. The Government relies on *Heaps,* in which this court held that venue for money laundering of drug proceeds was proper in the district in which the proceeds were criminally generated. *See Heaps,* 39 F.3d at 482. Our holding in *Heaps,* however, was based on the proposition that the generation of the criminal proceeds that were eventually laundered is an "essential element[ ]" of the crime of money laundering, *Beddow,* 957 F.2d at 1336; *see Heaps,* 39 F.3d at 482, a proposition that the Supreme Court rejected in *Cabrales, cf. Cabrales,* 524 U.S. at 7, 118 S.Ct. 1772 (explaining that 18 U.S.C.A. § 1956(a)(1)(B)(ii) prohibits only "financial transactions . . ., not the anterior conduct that yielded the funds allegedly laundered"); *United States v. Williams,* 155 F.3d 418, 421 (4th Cir.1998) (holding that a decision by this court does not constitute binding precedent when the decision has been clearly undermined by a more recent Supreme Court decision).

■ The abrogation of *Heaps* is further established by *United States v. Rodriguez–Moreno*, 526 U.S. 275, 119 S.Ct. 1239, 143 L.Ed.2d 388 (1999). There, the defendant was charged with violating 18 U.S.C.A. § 924(c)(1) (West 2000), which prohibits using or carrying a firearm "during and in relation to any crime of violence." The defendant was charged with kidnaping an individual in Texas and then moving him to New Jersey and then to Maryland, where the defendant obtained a gun that he used to threaten the victim. *See Rodriguez–Moreno*, 526 U.S. at 276–77, 119 S.Ct. 1239. The Supreme Court held that venue was proper in the District of New Jersey on the § 924(c)(1) charge because the underlying crime of violence was an "essential conduct element[ ]" of the § 924(c)(1) offense. *Id.* at 280, 119 S.Ct. 1239. The Court distinguished *Cabrales* by observing that in *Cabrales*, the "existence of criminally generated proceeds" was only a "circumstance element" of money laundering in that it was established by proof of a crime that preceded the money laundering conduct. *Id.* at 280 n. 4, 119 S.Ct. 1239. Accordingly, both *Cabrales* and *Rodriguez–Moreno* clearly establish that the mere fact that proceeds were criminally generated in a particular district is not sufficient, standing alone, to establish proper venue in that district for a charge of laundering the money.[1]

The Government next argues that *Cabrales* is not controlling here because Villarini, again unlike the defendant in *Cabrales*, was charged with transporting the criminally generated funds from the district in which she was tried. Even assuming, however, that the indictment may be read as implicitly alleging that Villarini transported the money from Virginia to Florida,[2] it certainly contains no allegation that such transportation was part of a scheme to launder the money. Accordingly, *Cabrales* cannot be distinguished on this basis either.

The Government also relies upon *United States v. Solan*, 792 F.Supp. 99 (M.D.Fla. 1992), *aff'd*, 100 F.3d 969 (11th Cir.1996) (unpublished table decision), for the proposition that Villarini's money laundering offenses were continuing offenses under § 3237(a) because they were "offense[s] involving … transportation in interstate … commerce." 18 U.S.C.A. § 3237(a). In *Solan*, the district court ruled that the crime of delivery of a package containing firearms to a contract carrier, *see* 18 U.S.C.A. § 922(e) (West 2000), involves transportation in interstate commerce because transportation in interstate commerce is a "circumstance" of the offense: One element of the offense is that the delivery was made for the purpose of transporting the package in interstate or foreign commerce. *Solan*, 792 F.Supp. at 100. Even assuming that *Solan* was correctly decided, it is distinguishable because, unlike the crime charged in *Solan*, money laundering does not include transportation in interstate commerce as a "circumstance." Furthermore, as we noted

---

1. The Government maintains that *Heaps* is still good law after *Cabrales* because *Heaps* was based on more than a conclusion that procuring the money illegally is an element of money laundering. Specifically, the Government asserts that the panel in *Heaps* "emphasized that the defendant was also charged with drug trafficking in the Eastern District of Virginia and that the laundered money came from drug proceeds." Brief for the United States at 20 (citing *Heaps*, 39 F.3d at 482–83). Although the Government is correct that this court emphasized those factors, the discussion of those factors was not related to the question of whether the money laundering was a continuing offense. Rather, it concerned the distinct issue of whether the district court abused its discretion, especially regarding some conspiracy counts, in not concluding that *convenience* necessitated transferring the case to a different district pursuant to Federal Rule of Criminal Procedure 21(b). *See Heaps*, 39 F.3d at 483.

2. The introductory section of the indictment, which is incorporated into each count of the indictment, charges that Villarini moved from Virginia to Florida. However, the indictment does not allege how the stolen money was transported from Virginia to Florida or who transported it there.

previously, the indictment contained no allegation that the funds that were laundered were transported from Virginia to Florida in furtherance of a money laundering scheme.

For all of these reasons, we hold that *Cabrales* controls the result here. By any measure, the Government did not charge Villarini with money laundering offenses that began in Virginia or involved transportation in interstate commerce. Accordingly, venue on the money laundering counts was improper in the Western District of Virginia, and we therefore vacate the money laundering convictions.

## IV.

 Villarini finally maintains that the district court asked improper questions of Government witnesses, thereby depriving her of a fair trial. We conclude that even if any of the challenged questions were improper, any prejudice to Villarini was cured by the instructions of the district court.

During Edwards' testimony, after she admitted that she did not count Villarini's mutilated cash or even compare the thickness of the stack of mutilated cash to the amount Villarini reported as being in the stack, the district court asked of Edwards, "You just weren't the best auditor in the world, were you?" J.A. 125. Later during Edwards' testimony, the court asked, "Would it be fair to say that you, you know, you were a small group and everybody trusted everybody else?" *Id.* at 142.

Additionally, Villarini's counsel asked Wanda Gardner, an internal auditor of the Bank of Floyd, if Edwards was dishonest by virtue of her practice of signing off on Villarini's statement sheet without actually counting the mutilated cash. Gardner answered affirmatively. The district court then asked Gardner, "Do you agree, I mean, as far as that statement is concerned, that neither one of them [Villarini and Edwards] were honest?"[3] *Id.* at 151.

Gardner again responded affirmatively. Villarini's objection that the question implied that she was dishonest was overruled by the district court.

During the closing charge, the district court instructed the jury that it "should not infer anything whatsoever from any questions that I might have asked any of the witnesses in this case." *Id.* at 217. The court further instructed the jury that it should not speculate concerning the opinion of the court regarding any part of the case and reminded the jury that it was the sole trier of fact.

Villarini claims that the district court by its questions endorsed the Government's theory of the case by implying that she was not honest and that she took advantage of Edwards' incomplete audits and the trusting nature of the organization. Villarini further claims that the questions cast a shadow on her defense that it was Edwards who embezzled the money. According to Villarini, her strongest defense against the charges was Edwards' audits showing that what Villarini reported on hand as mutilated cash was actually an accurate number.

 Rule 614(b) of the Federal Rules of Evidence permits a district court to interrogate witnesses. However, the court should not give the appearance of partiality or undermine the legitimate efforts of any of the parties to present a case. *See United States v. Wilson*, 118 F.3d 228, 237 (4th Cir.1997). The conduct of a court in questioning witnesses is reviewed for abuse of discretion. *See United States v. Seeright*, 978 F.2d 842, 847 (4th Cir.1992). A new trial is required only if the resulting prejudice was so great "that it denied any or all the appellants a fair, as distinguished from a perfect, trial." *United States v. Parodi*, 703 F.2d 768, 776 (4th Cir.1983) (internal quotation marks omitted).

We need not decide whether the questions at issue were improper because, even if they were, any prejudice suffered by

---

**3.** Villarini was to have observed Edwards' audits.

Villarini as a result of the three questions over the course of the four-day trial was insufficient to deny Villarini a fair trial. *Cf. id.* (holding that upon review of the entire trial, two challenged comments made by the court did not support an inference that the court was unfairly biased against the defendant). Moreover, any prejudice was cured by the instruction that the court was the sole trier of fact, and that the jury should neither infer anything from the questions of the court nor consider whether the court had an opinion about the case. *See Bell v. Evatt,* 72 F.3d 421, 434–35 (4th Cir.1995); *United States v. Billups,* 692 F.2d 320, 327 (4th Cir.1982). Accordingly, the district court did not err in denying Villarini's new trial motion.

### V.

In sum, we conclude that the Government's evidence was sufficient to support the money laundering convictions, but we nonetheless vacate those convictions because venue was improper. We also affirm Villarini's embezzlement conviction, concluding that questioning by the district court did not deprive her of a fair trial. Accordingly, we remand for resentencing.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED.*