VILLANTI, Chief Judge.
Joe Seephis Hardie appeals his convictions for one count of grand theft and three counts of money laundering which arose out of activities that occurred when he was serving as pastor of the New Mount Zion Missionary Baptist Church. The State cross-appeals the downward departure sentence imposed by the trial court, which was premised on the church’s alleged need for restitution. We affirm Hardie’s grand theft conviction without further comment. We also affirm his convictions for money laundering for the reasons discussed below. However, because Hardie did not offer competent, substantial evidence that the church’s need for restitution outweighed the “need,” under the Criminal Punishment Code, for his incarceration, we reverse the downward departure sentence and remand for resentenc-ing.
Hardie served as pastor of the New Mount Zion Missionary Baptist Church in Lakeland from 1995 until early 2009. The church received donations from various' sources, and the donations were divided among four bank accounts: the mortgage account, the operating account, the scholarship account, and the benevolent account. Parishioners could designate the account into which their contributions should be deposited, and each account had a dedicated use. As to the benevolent account, the funds were to be used solely to help those in need in the community, and the church gave Hardie sole control over the use of that account. As to the other accounts, Hardie had no more than joint control; however, while the church required two signors on every check, the banks where the accounts were held did not.
Between 2007 and 2009, Hardie paid numerous personal bills with money from the benevolent account, so much so that it amounted to his essentially using the account as an extension of his personal *299 checking account. To avoid detection of his use of the funds, Hardie manipulated the benevolent and mortgage accounts so as to conceal many of the improper transactions. For example, Hardie would write a check from the mortgage account, held at Fifth Third Bank, and deposit that check into the benevolent account, held at SunTrust. Hardie would then write a check from the benevolent account to himself or to petty cash and then cash that check and “pocket” the proceeds by depositing them into his personal account at Wachovia/Wells Fargo. The evidence at trial showed that Hardie managed to pilfer approximately $115,204 in church funds over two years, and approximately $29,180 of that total resulted from the disguised transactions between the mortgage and benevolent accounts.
In 2009, after the church treasurer discovered certain irregularities in its books, the church contacted the police. The State then conducted its own forensic accounting investigation and charged Hardie with one count of scheme to defraud, one count of grand theft of $100,000 or more, one count of grand theft of $20,000 or more, two counts of money laundering in the second degree, and one count of money laundering in the third degree. Hardie proceeded to a jury trial on the charges, and at the conclusion of the State’s case, the trial court granted Hardie’s motion for judgment of acquittal as to the grand theft of $20,000 or more charge. The jury subsequently convicted Hardie of all of the remaining charges.[1]
In this appeal, Hardie argues that his motion for judgment of acquittal as to the money laundering charges should have been granted because the proceeds were not obtained from a “specified unlawful activity” and because his actions did not satisfy the concealment requirement in the money laundering statute. Given the evidence presented at trial, we disagree.
Section 896.101(3), Florida Statutes (2009), provides:
(3) It is unlawful for a person:
(a) Knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, to conduct or attempt to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity:
1. With the intent to promote the carrying on of specified unlawful activity; or
2. Knowing that the transaction is designed in whole or in part:
a. To conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or
b. To avoid a transaction reporting requirement or money transmitters’ registration requirement under state law.
(Emphasis added.) A “specified unlawful activity” is defined as any “racketeering activity.” § 896.101(2)(g). “Racketeering activity” includes committing, attempting, or conspiring to commit a chargeable crime “relating to theft, robbery, and related crimes” or soliciting, coercing, or intimidating another person to do so. § 895.02(l)(a)(32), Fla. Stat. (2009). A “transaction” for purposes of section 896.101(3) includes “any [ ] payment, transfer, or delivery by, through, or to a finan *300 cial institution, by whatever means effected.” § 896.101(2)(c). And because the word “conceal” is not defined in the statute, the word maintains its plain and ordinary meaning. See Fla. Birth-Related Neurological Injury Compensation Ass’n v. Fla. Div. of Admin. Hearings, 686 So.2d 1349, 1354 (Fla.1997) (noting that when the legislature has not defined the words used in a statute, the language should be given its “plain and ordinary meaning”). As defined in Merriam-Webster’s Collegiate Dictionary (11th ed. 2003), “conceal” means to “prevent disclosure or recognition of; to place out of sight.”
Here, the evidence presented at trial was sufficient to establish the required elements of both a specified unlawful activity and concealment. To prove that Har-die committed a specified unlawful activity, the State presented evidence that he repeatedly wrote checks to himself from the benevolent fund, a fund intended for the needy in the community, which Hardie— with his Jaguar, salary, and church-funded travel account — clearly was not. With these improper and unauthorized acts, Hardie’s theft was completed, thereby satisfying the “specified unlawful activity” element of the money laundering statute.
In challenging the money laundering convictions, Hardie argues that his transfer of the church’s funds cannot constitute money laundering because the funds themselves were not “the proceeds of some form of unlawful activity.” Instead', they were lawful donations to the church. However, Hardie misunderstands the focus of this charge. Once Hardie took funds from the mortgage account, which had been designated by the donors for use in paying the church’s mortgage, and transferred them into the benevolent account, which had been designated for helping the needy in the community, the transferred funds became proceeds of an unlawful activity. Hardie’s subsequent transfers and misuse of these funds — stolen first from the mortgage account and then again from the benevolent account— constituted a “specified unlawful activity” for purposes of the money laundering statute.
While we could find no Florida case on point, Hardie’s actions are analogous to those of the defendant in United States v. Villarini, 238 F.3d 530 (4th Cir.2001). There, Villarini, a head bank teller, was responsible for reporting the amount of damaged cash the bank received. Id. at 532. However for many years, she overstated the amount of damaged cash actually received. Id. Then, on her last day of work, she prepared a ticket indicating a cash payout of $83,000. Id. However, the bank’s auditors soon discovered that Vil-larini’s drawer was short $83,000 with no justification for the payout ticket. Id. The bank theorized that Villarini used the cash payout to disguise her overstatement of the damaged cash for which she was responsible. Id. Shortly thereafter, Villarini deposited some of the stolen money into personal bank accounts, in four transactions of varying amounts, and began making purchases with the purloined funds. Id. She was convicted of four counts of money laundering, and the Fourth Circuit upheld the conviction. Id. at 531-32.
Like Villarini, who miselassified money over a period of time with the intent to convert it for her own personal needs, Hardie improperly and without authorization converted money intended to pay the church’s mortgage by transferring it into an account holding funds intended to help the needy and then converted the funds again to satisfy his own personal needs. This evidence, like the evidence in Villari-ni, was sufficient to establish the “specified unlawful activity” element of the offense of money laundering.
*301 As to the concealment element of its case, the State presented evidence that Hardie wrote checks from the mortgage account to the benevolent account and then wrote checks from the benevolent account to himself. He then cashed the checks and deposited the cash into his personal account. These multiple transactions involving three different banks served to disguise the original ownership of the money, thereby satisfying the concealment requirement under the money laundering statute. See United States v. Johnson, 440 F.3d 1286, 1292 (11th Cir.2006) (stating that “multiple movements of the same funds that assisted in concealing their original source” is indicative of concealment); Villarini, 238 F.3d at 533 (affirming the money laundering conviction of a bank teller who stole $83,000 from her bank through a falsified cash payout and deposited the funds into her personal account through a series of small cash transactions); United States v. Garcia-Emanuel, 14 F.3d 1469, 1475-76 (10th Cir.1994) (providing a nonexhaustive list of types of evidence that support an intent to conceal, including “unusual secrecy surrounding the transaction; [and] structuring the transaction in a way to avoid attention”). And the fact that Hardie directed all of the stolen funds through the benevolent account — the account over which he had sole discretion — served to further cloud detection. Because the State satisfied its burden to present prima facie evidence of both disputed elements of the money laundering statute, the trial court properly denied Hardie’s motion for judgment of acquittal, and we affirm Hardie’s convictions for these offenses.
In its cross-appeal, the State challenges the downward departure sentence of community control followed by probation that the court imposed on Hardie. Hardie requested and received this downward departure sentence based on his claim that the church’s need for restitution outweighed the need for his imprisonment as allowed for by section 921.0026(2)(e), Florida Statutes (2009). However, because Hardie failed to present competent, substantial evidence to support his request, the trial court abused its discretion in imposing this sentence.
Section 921.0026 lists several circumstances under which a downward departure sentence may be appropriate. In particular, section 921.0026(2)(e) states that the court may depart downward when “[t]he need for payment of restitution to the victim outweighs the need for a prison sentence.” Competent, substantial evidence must exist to support the chosen departure reason. Banks v. State, 732 So.2d 1065, 1067 (Fla.1999). In regard to section 921.0026(2)(e) specifically, the defendant must present “some evidence of the victims’ needs ” in order to qualify for a downward departure. State v. Naylor, 976 So.2d 1193, 1196 (Fla. 2d DCA 2008); see also Demoss v. State, 843 So.2d 309, 312-13 (Fla. 1st DCA 2003). In the absence of such evidence, the downward departure sentence cannot stand.
At Hardie’s sentencing hearing, the State requested that the trial court impose the lowest permissible sentence under Hardie’s Criminal Punishment Code score-sheet, which was 97.5 months in prison. Hardie then presented evidence that he contended would support a downward departure based on the church’s need for restitution. However, that evidence consisted of the testimony of several church members who indicated that “they had forgiven” Hardie. The church members also presented testimony and documentation requesting that the court have mercy on Hardie, not because the church needed restitution, but because the church elders themselves had forgiven Hardie and did *302 not want him to face additional hardship. In addition, Hardie presented testimony from other pastors from the community, all of whom indicated that they would help the church recover its stolen funds through fundraisers regardless of Hardie’s fate.
In sum, this evidence did not establish that the church had a need for restitution. Instead, it showed that the church was willing, in its Christian spirit, to forego restitution completely. Further, the evidence failed to establish that any potential need for restitution could be satisfied only if Hardie were not incarcerated. In fact, the evidence proved the contrary; i.e., that regardless of Hardie’s whereabouts, the community would help the church recoup its losses. While such magnanimity may be relevant to the length of the prison sentence the trial court elects to impose, it does not establish a legal basis for a downward departure sentence. In the absence of any evidence — much less ■ competent, substantial evidence — that the church’s need for restitution outweighed the legal requirement for a prison sentence, the trial court did not have a legal basis to depart downward. Hence, Hardie’s downward departure sentence must be reversed, and on remand,' the trial court must resentence Hardie to a legal sentence.
Convictions affirmed; sentences reversed and remanded for resentencing.
CASANUEVA and LaROSE, JJ„ concur.

. At sentencing, the State conceded that Har-die could not be convicted of and sentenced for both scheme to defraud and grand theft, and it elected to enter a nolle prosequi on the scheme to defraud charge. Hence, despite the jury’s verdict, Hardie was convicted of and sentenced for only one count of grand theft of $100,000 or more and three counts of money laundering.