DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JAMES WARREN RADICE**,
Appellant,

v.

**STATE OF FLORIDA**,
Appellee.

No. 4D17-1373

[May 1, 2019]

Appeal and cross-appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Timothy L. Bailey, Judge; L.T. Case No. 062015CF005572A88810.

Jason T. Forman of the Law Offices of Jason T. Forman, P.A., Fort Lauderdale, for appellant.

Ashley B. Moody, Attorney General, Tallahassee, and Allan R. Geesey, Assistant Attorney General, West Palm Beach, for appellee.

KUNTZ, J.

After James Radice was convicted of felony battery, the circuit court granted a downward departure and sentenced him to twenty months' imprisonment followed by two years' probation. He appeals his conviction and the court's denial of his motion for new trial. The State cross-appeals the downward departure sentence. We affirm the issues raised on appeal.[1] We reverse the court's downward departure of Radice's sentence on the cross-appeal, and we remand for resentencing.

---

[1] We affirm Radice's claims of ineffective assistance of counsel without prejudice to raise the issues in a proper post-conviction motion.

## Background

### i. The Victim's Testimony

The State charged Radice with felony battery. At trial, a witness testified that the Victim worked for him as a driver for his private car service and was authorized to pick up a client on the night of the incident.

When the Victim arrived to pick up the client, the client asked if he could drive her and four other people to a different location. Radice was one of those four other people. The Victim explained that he could not drive to the other location and could not take all four other people in his vehicle. The Victim showed Radice the company email providing the route and passenger, but Radice wanted all four people driven to different locations. After the dispatcher confirmed that the Victim was to pick up one passenger and drive her to one location, the Victim told Radice, "[I]f you in [sic] my way, I can drop you off on my way, but I'm not going out of my way."

According to the Victim, this upset Radice. Radice pushed him in the chest as hard as he could and punched him in the face, knocking him unconscious. As a result, the Victim spent six or seven days in the hospital. The Victim testified he did not hit Radice first, push him, or provoke him.

### ii. Radice's Testimony

Radice told a different story. Radice testified that there was an issue about how many people would get into the car and that the Victim "was immediately agitated because he thought he had a ride for one person." Radice did not intend to go with the others, but he just wanted to make sure they could all get into the car.

Radice told the Victim that if he drove everyone to Radice's house, he would drop everyone off. But the Victim "really didn't want to hear anything that came out of [Radice's] mouth," and Radice thought the Victim was taking it "personally," as if Radice were "trying to tell him [how] to do his job."

Radice eventually got out of the car and started walking down the street to call an Uber. Radice noticed that the Victim "came around the back of the vehicle to continue this debate." The Victim seemed angry, offended, aggressive, and forceful. Radice kept telling the Victim to "get out of [his] face" and "leave [him] alone." The situation escalated, and the Victim got

2

louder and took another step in front of Radice.  He told Radice, "[D]on't talk to me like that. You don't tell me how to do my job."  According to Radice, the Victim was saying: "Hit me. Hit me. I sue you, I sue you." Radice admitted that he was also getting louder because he was frustrated.

Radice believed the argument was over because the Victim returned to his car.  But the Victim came running at him with both fists and tried to swing.  At first, Radice avoided the fists, but the Victim swung again and hit him in the face.  "Almost like a reaction, . . . everything happened so quickly"; Radice hit the Victim back and knocked him down.

### iii.    *Radice's Motion for New Trial*

After the jury returned a guilty verdict, Radice moved for a new trial. Radice argued the verdict was contrary to the weight of the evidence.  He argued the Victim was the only witness who said that the Victim "did not throw the first punch."  And before he knew he was being investigated for the battery, Radice told his Dentist that the Victim punched him in the mouth.  Radice visited his Dentist because his injuries from a preexisting incident had ruptured.  He also argued that the Dentist testified Radice's injuries suggested a punch and that the State did not impeach the Dentist. The court noted that the Dentist was a good witness but that he was "very quick" to say on cross-examination that "a lot of things" other than a punch could have ruptured Radice's stitches.

The State argued that Radice admitted to a battery and that the jury did not believe his self-defense theory.

The court denied the motion, stating:

> THE COURT: I get it. I think it is a great argument. I have no problem with that argument. I'm saying -- but the argument wasn't to me. That argument was presented to the jury. You made that argument.
>
> [DEFENSE COUNSEL]: Sure.
>
> THE COURT: And the jury came back unanimous, okay, that this wasn't self defense. I never expressed an opinion. I'm never going to express[] an opinion on what happened that night. I don't know. That is not my job in this case.
>
> Okay. We gave it to the nice people of the jury. That is who made the decision of guilt. But to say that the decision, the

jury's decision, is contrary to the evidence in this case, I don't think that is accurate.

[DEFENSE COUNSEL]: Okay.

### iv. Radice's Motion for Downward Departure From Sentencing Guidelines

After denying Radice's motion for new trial, the court addressed Radice's motion for downward departure from sentencing guidelines.[2] The minimum sentence under the sentencing guidelines was 40.35 months in prison. Radice moved for a downward departure under section 921.0026(2)(j), Florida Statutes (2017), arguing that "[t]he offense was committed in an unsophisticated manner and was an isolated incident for which the defendant has shown remorse."

The court granted his motion for a downward departure sentence and sentenced him to twenty months in prison followed by two years of probation.

### Analysis

### i. The Court Did Not Apply the Incorrect Standard in Denying Radice's Motion for New Trial

Radice argues the court applied the wrong standard in deciding his motion for new trial. His argument is based on the court's statement that the matter was given to the jury and that the court "never expressed an opinion." Radice is correct that a court must evaluate the evidence because Florida Rule of Criminal Procedure 3.600(a)(2) "provides that a trial court shall grant a new trial if the verdict is contrary to . . . the weight of the evidence." *Velloso v. State*, 117 So. 3d 903, 905 (Fla. 4th DCA 2013) (internal quotation marks omitted).

In *Velloso*, we explained that in "deciding a motion for new trial pursuant to Rule 3.600[(a)(2)], the trial court acts as a 'safety valve' by 'granting a new trial where the evidence is technically sufficient to prove the criminal charge but the weight of the evidence does not appear to support the jury verdict.'" *Id.* (quoting *Geibel v. State*, 817 So. 2d 1042, 1044 (Fla. 2d DCA 2002)). "Rule 3.600(a)(2) thus enables the trial judge to weigh the evidence and determine the credibility of witnesses so as to

---

[2] The judge first raised a downward departure, stating "I don't know if [counsel for Radice] plans on filing a motion for a downward departure."

act, in effect, as an additional juror." *Id.* (quoting *Tibbs v. State*, 397 So. 2d 1120, 1123 n.9 (Fla. 1981)).

Radice relies on *Fulword v. State*, 29 So. 3d 425 (Fla. 5th DCA 2010), to support his argument that the trial court applied the wrong legal standard in ruling on his motion for new trial. In *Fulword*, the trial court denied a motion for new trial, stating: "I think clearly the matter of credibility of witnesses is a matter for the jury, as is the issue of intent," and "[i]t was the [jury's] job to determine credibility and the jury's job to determine whether or not the State had proved the requisite intent on these two charges beyond a reasonable doubt." *Id.* at 426. After the State conceded error, the Fifth District reversed and remanded for the trial court to determine whether credible evidence—the weight of the evidence—supported the verdict. *Id.*

Radice also relies on *Robbins v. State*, 250 So. 3d 722 (Fla. 4th DCA 2018), where the prosecutor argued that the motion for new trial was "not the time for [the Court] to sit in the chairs of the jury," and the trial court "agree[d] with the State that it was a question of fact and the jurors got to see [defense counsel] challenge [the victim] with the prior inconsistent statement and it didn't make an impact on them." *Id.* at 724 (first, third, and fourth alterations in original). We reversed, citing *Velloso*, and concluded that the combination of the prosecutor's and court's comments "appear[ed] to demonstrate" that the trial court incorrectly applied the "sufficiency of the evidence" standard instead of the "weight of the evidence" standard. *Id.* at 726.

Here, the court did state that "[w]e gave it to the nice people of the jury. That is who made the decision of guilt." But that was not the entirety of the court's statement. The court continued: "[T]o say that the decision, the jury's decision, is contrary to the evidence in this case, I don't think that is accurate."

Thus, the court applied the correct standard and determined the weight of the evidence supported the conviction. We therefore affirm.

### *ii. The Court Erred in Granting Radice's Motion for Downward Departure Sentence*

The State argues that Radice's downward departure sentence is not supported by competent, substantial evidence because the record shows that the crime was not isolated, Radice did not show remorse, and the court failed to make specific findings on sophistication.

5

Competent, substantial evidence must exist to support a sentencing departure. *Hardie v. State*, 162 So. 3d 297, 301 (Fla. 2d DCA 2015) (citing *Banks v. State*, 732 So. 2d 1065, 1067 (Fla. 1999)). The decision to depart downward is a two-part process. *Banks*, 732 So. 2d at 1067. First, the court must determine whether there is a valid legal ground to depart and whether there is evidence in support of the legal ground. *Id.* Second, the court must determine whether it should depart. *Id.* at 1068 (footnote omitted).

Here, we address whether there was evidence to support the legal ground the court relied on to depart. In granting the downward departure, the court relied on section 921.0026(2)(j), Florida Statutes (2017), which allows a court to grant a downward departure when "[t]he offense was committed in an unsophisticated manner and was an isolated incident for which the defendant has shown remorse." But when a trial court relies "solely on this mitigator, [section 921.0026(2)(j)], all three elements must be shown." *State v. Strawser*, 921 So. 2d 705, 707 (Fla. 4th DCA 2006) (citing *State v. Cooper*, 889 So. 2d 119, 119 (Fla. 4th DCA 2004)).

So Radice had to establish he committed the offense in an unsophisticated manner, that it was isolated, and that he showed remorse. We first address whether the event was isolated because, if it was not, we need not address whether it was sophisticated or whether he showed remorse. And when the record does not show the incident is isolated, we reverse the sentence. *See, e.g.*, *State v. Perlman*, 118 So. 3d 994, 996 (Fla. 1st DCA 2013) (reversing and remanding for resentencing where the defendant's criminal record was "too extensive under established case law to permit a finding that the offenses at issue were isolated incidents" under section 921.0026(2)(j)); *State v. Waterman*, 12 So. 3d 1265, 1269 (Fla. 4th DCA 2009) (same).

The record does not establish this was an isolated incident. Radice himself testified:

> [Radice]: . . . Do you know how many thousands of fights happen on Fort Lauderdale Beach every year, roughly tens of thousands? How many actually get reported?
>
> [Prosecutor]: How many have you been in?
>
> [Radice]: How many have I been in? I can't even tell ya.

[Prosecutor]: You can't even tell [me].  So you're a frequent fighter, you get into fights on Fort Lauderdale Beach and you don't report them?

[Radice]: No, don't put words in my mouth because it is very rare that you will find me at the beach. . . .

Radice stated that he could not quantify the number of fights he had been in on Fort Lauderdale Beach.  And when asked to clarify, he simply stated that it was "rare that you will find me at the beach."  We have held that "[a]n offense [ ] is not isolated if [it] involves multiple incidents." *Bellamy v. State*, 199 So. 3d 480, 483 (Fla. 4th DCA 2016) (citing *Strawser*, 921 So. 2d at 707); *see also State v. Hollinger*, 253 So. 3d 1207, 1210 (Fla. 5th DCA 2018) (holding that the defendant's "multiple offenses cannot be considered to be isolated," even though he had no prior criminal history).  Radice also had two prior felony convictions, one prior domestic violence misdemeanor conviction, and one reckless driving misdemeanor.

Based on these facts, this was not an isolated incident and the court erred in granting a downward departure sentence.  *See, e.g., State v. Tice*, 898 So. 2d 268, 269 (Fla. 5th DCA 2005) ("While Tice has shown remorse, his criminal history does not support the conclusion that his latest felonies were isolated incidents.").

### *Conclusion*

We affirm the issues raised on appeal, reverse the downward departure sentence raised on cross-appeal, and remand for resentencing.

*Affirmed on main appeal; reversed and remanded on cross-appeal.*

GERBER, C.J., and TAYLOR, J., concur.

*       *       *

***Not final until disposition of timely filed motion for rehearing.***

7