DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**GERARD BALDIE,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2022-2163

[September 17, 2025]

Appeal and cross-appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; N. Hunter Davis, Judge; L.T. Case No. 06-2018-003668-CF-10A.

Daniel Eisinger, Public Defender, and Alan T. Lipson, Assistant Public Defender, West Palm Beach, for appellant.

James Uthmeier, Attorney General, Tallahassee, and Deborah G. Koenig, Senior Assistant Attorney General, West Palm Beach, for appellee.

CONNER, J.

Appellant Gerard Baldie appeals his convictions and sentences on six felonies and four misdemeanors. The crimes occurred because of Baldie driving under the influence (DUI). We find no merit to Baldie's three arguments for reversal. We agree with the state's cross-appeal seeking reversal of the downward departure sentences granted by the trial court pursuant to section 921.0026(2)(j), Florida Statutes (2016). We hold no competent substantial evidence supports the trial court's finding that Baldie's crimes were an isolated incident. We reverse the sentences and remand for resentencing.

*Background*

Baldie proceeded to trial on two counts of DUI manslaughter, two counts of vehicular homicide, two counts of leaving the scene of a crash with death, five counts of DUI with property damage, and four counts of leaving the scene of a crash with property damage. The charges arose from a horrific crash that killed two people.

The evidence showed that on the evening of the crash, Baldie had smoked marijuana with a friend. The friend had purchased the marijuana on the street. Both Baldie and the friend testified that Baldie had taken a single hit from a bong. After the single hit, Baldie almost immediately began acting paranoid and left the friend's apartment. Upon exiting the apartment, he drove a car. Shortly after, the crash occurred, involving multiple vehicles.

The traffic homicide investigator concluded that Baldie was traveling at 94 miles per hour on a commercial boulevard in Fort Lauderdale when he collided with the rear of a vehicle stopped at a red light. That vehicle was occupied by the two decedents. Baldie never applied brakes or attempted evasive action prior to the crash. After striking the decedents' vehicle, Baldie's vehicle struck two other vehicles.

After the collisions, Baldie exited his car and walked across the intersection. He did not remain at the crash scene, nor did he contact 911 or render aid to the occupants in the crashed vehicles. Instead, Baldie entered a mattress store, laid down on a mattress, got up, and calmly walked out and down the street. Baldie then entered a bar where he drank several unattended drinks on the bar. After entering the bar's bathroom, he removed his clothes and then left the bar naked. Baldie next proceeded to a restaurant and sat down while still naked at a table occupied by two restaurant patrons. After the restaurant manager called 911, law enforcement arrived and took Baldie into custody. Initially, law enforcement did not realize that Baldie had been involved in the collisions and assumed he needed mental health treatment.

Once law enforcement realized Baldie had been involved in the collisions, he was taken to the hospital for evaluation and his blood was drawn for testing. At the hospital, he was observed by medical staff and the traffic homicide investigator. While at the hospital, Baldie made statements to both medical staff and the investigator.

At trial, Baldie advanced a defense of involuntary intoxication. He acknowledged smoking a single hit of marijuana before driving that evening but testified that he had no memory of the collision and only a vague, fragmented recollection of subsequent events. Relying on testimony about his erratic behavior after consuming the marijuana, Baldie contended that the substance must have been laced with synthetic cathinones—such as flaka or bath salts—by the street dealer who supplied it to his friend. According to Baldie, his friend was unaware of any adulteration and did not exhibit the same reaction.

2

Both the state and Baldie presented expert toxicology testimony. Baldie's blood test results indicated the presence of marijuana; no other drugs or alcohol were detected. The toxicology tests used were not sophisticated enough to detect or confirm whether Baldie had consumed a cathinone. Both toxicologists acknowledged sometimes people have unexpected reactions to marijuana, even if they have regularly smoked marijuana in the past. Both toxicologists also acknowledged that Baldie's post-accident behavior was unusual for ingesting marijuana usually available in the United States. Neither toxicologist could definitively opine whether Baldie's behavior had been caused solely by marijuana that night, as opposed to marijuana laced with other intoxicants.

The jury found Baldie guilty as charged on all counts.

Baldie's sentencing scoresheet showed a lowest permissible prison sentence of 327 months (27.25 years) and a maximum sentence of life for each DUI manslaughter and vehicular homicide. Baldie moved for a downward departure sentence, which was granted over the state's objection. Additional facts regarding the downward departure motion will be discussed below. Baldie was sentenced concurrently on ten of the charges resulting in a total of nine years of incarceration followed by a total of fifteen years of probation on nine of the counts. The trial court withheld sentencing on the remaining five counts pending disposition of this appeal.

After sentencing, Baldie gave notice of appeal.

*Appellate Analysis*

Baldie moved for a section 921.0026(2)(j) downward departure sentence, asserting his offenses were committed in an unsophisticated manner and were an isolated incident for which he had shown genuine remorse. Baldie further argued a departure was warranted because his crimes were the result of involuntary intoxication, and he posed no future threat to society.

The state opposed a downward departure because the offenses were not an isolated incident. The state also argued Baldie had not shown any remorse for the offenses. Instead, Baldie blamed his crimes on whomever had laced the marijuana which he had smoked. Additionally, the state argued the trial court should not grant a downward departure because of the nature and circumstances of the crimes, the danger which Baldie posed to others by his driving, and the fact that driving under the influence

is not an accident. The state recommended the lowest permissible sentence be imposed.

Baldie testified at the sentencing hearing that he had smoked marijuana many times in the past and had never reacted that way before. On cross-examination, Baldie admitted that before the night of his crimes, he had smoked marijuana "probably 100 times," and he knew each time that the marijuana had been purchased on the street. Baldie also testified that when he had smoked the numerous times before, he had never driven afterwards because he never had a car at those times.

With regards to the isolated incident element for a downward departure, the trial court noted Baldie's numerous instances of smoking marijuana and stated:

> Unlawful that surely was, but it's not—has nothing to do with—with driving itself. It doesn't seem to establish any sort of pattern of this type of criminal conduct such that it would prevent the Court finding[] an isolated incident. Indeed, it appears it's—there is no dispute that Mr. Baldie has never been involved in—in anything like this before. . . .

> So, I think the Court is comfortable making [the] finding that this was an isolated incident[.]

As stated above, the trial court granted a departure sentence from the lowest permissible sentence of 27.25 years in prison to nine years in prison.

Below and on appeal, the state does not contest that Baldie's crimes were committed in an unsophisticated manner. Instead, the state contests the isolated incident and remorse elements for a section 921.0026(2)(j) downward departure. Because we agree with the state's argument that Baldie's crimes were not an isolated incident, we need not address the state's arguments regarding the remorse element.

Section 921.0026(2)(j) permits a downward departure sentence when "[t]he offense was committed in an unsophisticated manner and was an isolated incident for which the defendant has shown remorse." § 921.0026(2)(j), Fla. Stat. (2016). "Thus, in order to support the downward departure based on this statutory factor, there must be competent substantial evidence that: (1) the offense was committed in an unsophisticated manner, (2) it was an isolated incident, and (3) the defendant had shown remorse." *Staffney v. State*, 826 So. 2d 509, 511–

4

12 (Fla. 4th DCA 2002) (citing *State v. Butler*, 787 So. 2d 47, 48 (Fla. 2d DCA 2001)).  If any of the three elements are unsupported by competent, substantial evidence, then the appellate court must reverse.  *State v. Guerra*, 328 So. 3d 1002, 1005 (Fla. 4th DCA 2021) (citing *Bellamy v. State*, 199 So. 3d 480, 482 (Fla. 4th DCA 2016)).

"Neither the legislature nor the courts have established a bright-line rule for determining whether an offense is an isolated incident." *State v. Crossley-Robinson*, 275 So. 3d 662, 665 (Fla. 4th DCA 2019) (quoting *State v. Waterman*, 12 So. 3d 1265, 1268 (Fla. 4th DCA 2009)).  Nonetheless, "[a]n offense is not isolated if a defendant has an extensive prior criminal record." *Bellamy*, 199 So. 3d at 483.  The Second District has explained, "[t]he fact that a defendant who has previously committed numerous offenses has not in the past committed the same crime as the offense for which he is being sentenced does not mean that the current offense is 'an isolated incident.'" *State v. Ayers*, 901 So. 2d 942, 945 (Fla. 2d DCA 2005).  Additionally, the caselaw holds that "[a]n offense also is not isolated if it involves multiple incidents." *Bellamy*, 199 So. 3d at 483; *see also State v. Strawser*, 921 So. 2d 705, 707 (Fla. 4th DCA 2006) ("We recognize that, as there were multiple incidents involving one of the victims over a period of several months, the isolated incident [element] has not been met.").

The state argues the trial court erred in determining Baldie's crimes were an isolated incident because Baldie admitted he had smoked illegal marijuana "probably 100 times" before committing the tragic crimes at issue here.  More specifically, regarding the isolated incident element, the state argues it is irrelevant that Baldie testified he had never driven after the prior instances of illegal consumption of marijuana.  We agree.

Regarding the isolated incident element, "[a] trial court is not … precluded from giving a defendant a downward departure sentence just because the defendant has *any* prior criminal history." *Waterman*, 12 So. 3d at 1268.  In *Waterman*, we cited examples of cases affirming section 921.0026(2)(j) departures despite the defendant having some criminal record.  *Id.*  In *State v. Fontaine*, 955 So. 2d 1248, 1251 (Fla. 4th DCA 2007) (Warner, J., concurring), the defendant's criminal record included two misdemeanors that were committed ten years earlier, and in *State v. Randall*, 746 So. 2d 550, 552 (Fla. 5th DCA 1999), the defendant had only one prior criminal conviction.  We also cited *State v. Tice*, 898 So. 2d 268 (Fla. 5th DCA 2005), and observed that Tice's criminal record "fell somewhere in the middle of the spectrum of criminal records, where on one end lies the defendant with a clearly excessive record, and on the other end lies a defendant with no prior criminal record." *Waterman*, 12 So. 3d at 1268.  We reversed Waterman's departure sentence because of his prior

record.  *Id.*  What is significant about *Waterman* is our recognition that the analysis of the isolated incident element can involve a "spectrum" and timeline of past criminal behavior.

The notion of a spectrum of past criminal behavior in analyzing the isolated incident element makes sense because it is obvious from the combination of section 921.0026(2)(j) departure elements that the legislature intended trial courts to have discretion to depart from a lowest permissible sentence for those offenders who have consistently demonstrated a respect for the law, rather than a disrespect for the law. Stated another way, we do not construe section 921.0026(2)(j) to allow a defendant who has frequently broken the law to qualify for an isolated incident departure sentence, even in situations where the defendant has broken the law numerous times but has never been prosecuted.

We determine *Clark v. State*, 315 So. 3d 776 (Fla. 1st DCA 2021), to be instructive on this point.  Clark was convicted of DUI manslaughter, DUI with property damage, and DUI.  *Id.* at 779.  The charges were the result of Clark driving an all-terrain vehicle (ATV) while intoxicated with his young son on the back of the ATV.  *Id.*  A truck collided with the ATV, injuring Clark and killing his son.  *Id.*

The trial court rejected Clark's downward departure request, finding the incident was not "isolated."  *Id.* at 780.  The First District affirmed, reasoning:

> Absence of a criminal record does not mandate the trial court to find an incident isolated.  The trial court heard evidence from the appellant's family and friends that he had a history of drinking heavily; that he often drove with his son on the back of his ATV to the friend's house; that he had previously ridden ATVs with [his son] while drinking; and that he did so in violation of the ATV warnings that cautioned against passengers and driving while drinking.  In addition, the friend testified there was drinking that night, and the appellant admitted to having drinks earlier in the day.  The trial court properly concluded that the appellant's reckless behavior had occurred more than one time, which allowed it to find the incident was not isolated.

*Id.* at 781 (emphasis added).[1]

We acknowledge that *Clark* is factually dissimilar to the instant case. In *Clark*, the evidence showed the defendant, on more than one occasion, had previously engaged in the same criminal behavior for which he was never previously caught (driving an ATV while intoxicated with his son on the back). In the instant case, the evidence showed Baldie had smoked marijuana over one hundred times but had never driven after smoking. However, we deem it significant that *Clark* focused on past criminal behavior for which the defendant had never been charged as grounds for determining the isolated incident element was not met.

We also find our isolated incident analysis in *Radice v. State*, 271 So. 3d 1007 (Fla. 4th DCA 2019), to be instructive. After trial, Radice was sentenced for felony battery. *Id.* at 1009. The trial court granted Radice's section 921.0026(2)(j) departure motion and the state cross-appealed. *Id.* Like the instant case, the state in *Radice* argued on appeal that the felony battery was not an isolated event. *Id.* at 1011. Radice had two prior felony convictions, one prior domestic violence misdemeanor conviction, and one reckless driving misdemeanor. *Id.* at 1012. Nonetheless, the trial court granted a section 921.0026(2)(j) departure sentence. *Id.* at 1010.

In *Radice*, we agreed with the state's argument that the evidence did not support an isolated incident finding. Our analysis began with quoting a portion of the sentencing transcript:

> [Radice]: … Do you know how many thousands of fights happen on Fort Lauderdale Beach every year, roughly tens of thousands? How many actually get reported?
>
> [Prosecutor]: How many have you been in?
>
> [Radice]: How many have I been in? I can't even tell ya.
>
> [Prosecutor]: You can't even tell [me]. So you're a frequent fighter, you get into fights on Fort Lauderdale Beach and you don't report them?
>
> [Radice]: No, don't put words in my mouth because it is very rare that you will find me at the beach[.]

---

[1] Although the *Clark* opinion does not specifically state Clark had no prior record, we assume that was the case, given the "absence of a criminal record" statement. *Id.* at 781.

*Id.* at 1012. We went on to explain that Radice stated he could not quantify the number of fights in which he had been involved on Fort Lauderdale Beach. *Id.* We next quoted *Bellamy* for the proposition that an offense is not isolated if it involves multiple incidents. *Id.* We then noted Radice's prior convictions and concluded: "Based on these facts, this was not an isolated incident and the court erred in granting a downward departure sentence." *Id.*

Again, we acknowledge *Radice*'s facts are distinguishable from the instant case because Radice had at least four previous convictions, whereas Baldie had no prior criminal record. However, what it is notable is the discussion that Radice admitted he had been involved in so many fights that he could not recall the number as a factor in determining whether the sentencing crime was an isolated event. *Id.* at 1012. Radice's fights without arrests demonstrate a pattern of disrespect for the law, just as Baldie's numerous instances of illegal marijuana use demonstrate a repeated pattern of disrespect for the law.

Thus, based on Baldie's admitted numerous instances of illegally smoking marijuana, we hold no competent substantial evidence supported the trial court's finding that Baldie's crimes were an isolated incident.

*Conclusion*

We determine the grounds for reversal argued by Baldie lack merit and therefore affirm his convictions without discussion. We agree with the state's arguments that the trial court erred in granting departure sentences for Baldie's crimes, because no competent substantial evidence demonstrated his crimes were an isolated incident. We therefore reverse the sentences and remand to the trial court for resentencing.

*Convictions affirmed, sentences reversed and remanded for resentencing.*

GERBER and KLINGENSMITH, JJ., concur.

\*      \*      \*

**Not final until disposition of timely filed motion for rehearing.**

8